IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORRAINE MONTGOMERY,<br>      Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>      Defendant. | )<br>)<br>)<br>)  Civil Action No. 05-1418<br>)  Judge Lancaster<br>)<br>)<br>)<br>)<br>) |

## JUDGMENT ORDER

Gary L. Lancaster,
District Judge.                                              January 23, 2007

     This matter is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), which authorize an unsuccessful claimant seeking disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying an application for such benefits. Plaintiff, Lorraine Montgomery, alleges that the decision of Administrative Law Judge Melvin Rosenberg ("ALJ") that she is not disabled, and therefore not entitled to DIB and SSI, should be reversed because it is contrary to law and unsupported by substantial evidence.

     Plaintiff filed applications for SSI and DIB on September 12, 2003, and October 1, 2003, respectively. (R. at 13). After the initial denial of her claims, a hearing was held before the ALJ in Pittsburgh, Pennsylvania, on April 19, 2005. (R. at 194). On May 20, 2005, the ALJ issued a decision which was not favorable to plaintiff. (R. at 17). The Appeals Council denied plaintiff's request for review on August 2, 2005, thereby making the ALJ's decision the final decision of the Commissioner with respect to plaintiff's case. (R. at 5). Thereafter, on October 13, 2005, plaintiff commenced this action against the Commissioner. Plaintiff and the Commissioner filed cross-motions for summary judgment on October 9, 2006, and November 6, 2006, respectively.

     When resolving the issue of whether a claimant is disabled and therefore entitled to DIB

1

or SSI, the Social Security Administration ("SSA") uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted). In this case, the ALJ alternatively concluded that plaintiff was not disabled at the fourth and fifth steps of the sequential evaluation process. (R. at 16). At the outset, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (R. at 14). Moving on to the second step, he noted that plaintiff had "severe orthopedic complaints, including chondromalacia and status post bilateral knee surgeries." *Id.* These impairments were deemed to be severe for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). *Id.* Nonetheless, they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed plaintiff's residual functional capacity as enabling her to perform sedentary work with a sit/stand option. (R. at 15). Although plaintiff was not found to be capable of performing all of her past relevant work, the ALJ concluded that she was capable of performing her past relevant work as a customer service representative. (R. at 16). In the

alternative, the ALJ determined that plaintiff could work as a telephone salesperson, a ticket salesperson, a cashier, or an administrative assistant. *Id.* The testimony of Sam Edelman, an impartial vocational expert, established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). (R. at 218-222).

In support of her motion for summary judgment, plaintiff makes three distinct arguments. First, she argues that the ALJ failed to properly evaluate the opinion of Dr. Russell Gilchrist. (Br. for Plaintiff at 3). Second, she contends that the ALJ mischaracterized the cashier position as a sedentary job instead of viewing it as a light job. *Id.* at 4. Third, she asserts that the ALJ erred in not having her undergo a consultative medical examination to assess the extent to which her impairments diminished her residual functional capacity. *Id.* at 5. The Court will proceed to address each argument in turn.

In her first argument, plaintiff calls the Court's attention to a treatment note written by Dr. Gilchrist on February 23, 2005. She objects to the ALJ's decision to discount her contention that she needed to lay down during the day. *Id.* at 3. Her argument is based on the following treatment note in Dr. Gilchrist's records:

> Today we had the pleasure of reevaluating Ms. Montgomery at the PM&R Spine Clinic. She is a 27-year-old female who presents today after undergoing two bilateral S1 transforaminal epidural steroid injections. She states that she has had no significant relief of her pain symptoms as a result of these injections. She rates her pain approximately 8/10 today. Exacerbating factors are increased activity. Mitigating factors are lying down. She is also complaining of migraine headaches over the past two weeks, four times per week.

(R. at 162). Contrary to the position taken by plaintiff, this treatment note does not provide a definitive opinion as to whether plaintiff would need to lie down throughout the course of a workday. A general statement indicating that her condition improved when she was in the process of lying down does not explain the nature of her functional limitations. The presence or absence of a statutory disability is not determined with reference to the nature of the medical intervention needed to address it. Instead, it is determined with reference to a claimant's ability or inability to perform specific tasks associated with specific jobs. *Rivera v. Barnhart*, 239 F.Supp.2d 413, 420 (D.Del. 2002). The governing law recognizes "a distinction between the

3

issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). Plaintiff produces no evidence whatsoever that her impairments preclude her from engaging in work activities consistent with the ALJ's residual functional capacity assessment.

Mr. Edelman, in response to a question posed by plaintiff's attorney, testified that all of the jobs which he had previously identified in his testimony could not be performed by someone who was off task for up to two hours each day, and who needed to lie down because of medication-caused fatigue. (R. at 222). Nevertheless, the ALJ was not required to incorporate every limitation *alleged* by plaintiff into his residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Instead, he was only required to incorporate plaintiff's *credibly established* limitations. *Id*. A close examination of the hearing transcript reveals that the ALJ offered to consider any evidence offered by plaintiff to support the limitations contained within the attorney's question to Mr. Edelman. (R. at 222). Plaintiff was clearly put on notice that the ALJ did not believe that the evidence before him was sufficient to establish this limitation. The ALJ was clearly acting within his authority in discounting the limitations proposed in the question posed to Mr. Edelman by plaintiff's attorney.

In her second argument, plaintiff contends that the ALJ mischaracterized the cashier position as a sedentary job when, in fact, it is a light job. (Br. for Plaintiff at 4). The Commissioner argues that the job of cashier also exists at the sedentary exertional level. (Br. for Defendant at 15-16). This question, however, is inconsequential for two independent reasons. First of all, the ALJ determined, at the *fourth* step of the sequential evaluation process, that plaintiff could return to her past relevant work as a customer service representative. (R. at 16). Therefore, it was not necessary for the ALJ to reach the fifth step of the process. Nevertheless, he proceeded to determine, at the fifth step, that plaintiff could work as a telephone salesperson, a ticket salesperson, a cashier, or an administrative assistant. *Id*. Plaintiff does not argue that the ALJ's classification of the telephone salesperson, ticket salesperson and administrative assistant positions as sedentary was erroneous. For this reason, assuming *arguendo* that the ALJ and Mr. Edelman erred in classifying the cashier position as a sedentary job, the Commissioner still met her burden at the fifth step by identifying three other jobs existing in the national economy which

were consistent with plaintiff's residual functional capacity. Plaintiff bore the burden at the fourth step, and the Commissioner bore the burden at the fifth step. *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005). The ALJ's decision rested on *both* steps, and plaintiff's argument, even if true, could not itself change the ALJ's ultimate determination at *either* step.

In her third and final argument, plaintiff argues that the ALJ should have requested an independent consultative medical examination to assess her residual functional capacity. (Br. for Plaintiff at 5). As the Commissioner points out, however, plaintiff makes no attempt to explain why such an examination was warranted under 20 C.F.R. §§ 404.1519a and 416.919a. (Br. for Defendant at 15). In contrast to plaintiff's assertions, the ALJ's residual functional capacity assessment was not purely speculative. Instead, he based it on the reports of two treating physicians and one examining physician. (R. at 15). Congress has clearly expressed its intent that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). "Substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Where the Commissioner's decision is supported by substantial evidence, the Court cannot set that decision aside even if it "would have decided the factual inquiry differently." *Id.* "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Given the limited nature of the Court's inquiry, it is clear that the decision of the Commissioner in this case must be affirmed.

AND NOW, this 23th day of January, 2007, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment [doc. no. 15] is DENIED and defendant's motion for summary judgment [doc. no. 17] is GRANTED.

IT IS FURTHER ORDERED that final judgment in this Court is entered pursuant to Rule 58 of the Federal Rules of Civil Procedure and the Clerk of Court is directed to mark this case closed.

BY THE COURT:

_____, J.

cc: All Counsel

5